**IN THE UNITED STATE DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **GREG FRAUSTO, INDIVIDUALLY** | § | |
| **AND AS REPRESENTATIVE AND** | § | |
| **HEIR TO THE ESTATE OF** | § | |
| **DIANE RIMERT, DECEASED, AND** | § | |
| **GLEN FRAUSTO, INDIVIDUALLY** | § | |
| **AND AS HEIR OF THE ESTATE OF** | § | |
| **DIANE RIMERT, DECEASED, AND** | § | |
| **JAMIE SNOW, INDIVIDUALLY AND** | § | |
| **AS HEIR OF THE ESTATEOF** | § | |
| **DIANE RIMERT, DECEASED** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action No. 1:14-cv-137-LY** |
| **TEXAS HEALTH AND HUMAN** | § | |
| **SERVICES COMMMISSION, TEXAS** | § | |
| **DEPARTMENT OF AGING AND** | § | |
| **DISABILITY SERVICES, THOMAS** | § | |
| **SUEHS, CHRISTOPHER TRAYLOR,** | § | |
| **CAROL AHMED, STEVEN SHOTTS,** | § | |
| **LEE PERSEFIELD, DAPHNE SHAW,** | § | |
| **PAM ENGLE, STEPHANIE WILLMS,** | § | |
| **JOHN DOES 1 THROUGH 9, AND** | § | |
| **JANE DOES 1 THROUGH 9,** | § | |
| **INDIVIDUALLY AND IN THEIR** | § | |
| **OFFICIAL CAPACITIES  AS** | § | |
| **OFFICIALS AND/OR EMPLOYEES** | § | |
| **OF THE TEXAS HEALTH AND** | § | |
| **HUMANS SERVICES COMMISSION** | § | |
| **AND THE TEXAS DEPARTMENT OF** | § | |
| **AGING AND DISABILITY SERVICES** | § | |
| | § | |
| **Defendants.** | § | |

## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

COMES NOW Greg Frausto, individually and as representative and heir to the estate of

Diane Rimert, deceased, Glen Frausto, individually and as heir to the estate of Diane Rimert,

deceased, and Jamie Snow, individually and as heir of the estate of Diane Rimert, deceased

("Plaintiffs"), complaining of the Texas Health and Human Services Commission ("HHSC"), the Texas Department of Aging and Disability Services ("DADS"), Thomas Suehs, Christopher Traylor, Carol Ahmed, Steven Shotts, Lee Persefield, Daphne Shaw, Pam Engle, Stephanie Willms, John Does 1 through 9, and Jane Does 1 through 9 ("Defendants") (all Defendants except HHSC and DADS, the "1983 Defendants"), and for cause of action would respectfully show the Court the following:

## PARTIES

1.      Plaintiff Greg Frausto is an individual residing in the State of Louisiana.  At the time the acts and omissions relevant to this lawsuit took place Greg Frausto was a citizen and resident of Texas.  Plaintiff Greg Frausto is also the Independent Administrator of the Estate of Diane Jean Rimert, Deceased, pursuant to a probate action filed in the Probate Court No. 2 of Tarrant County, Texas, styled *In re: Estate of Diane Jean Rimert, Deceased*, Cause No. 2012-PRO3039-2.  At all relevant times Diane Rimert was a citizen and resident of Texas, and the estate is located in Texas.

2.      Plaintiff Glen Frausto is an individual residing in Azle, Tarrant County, Texas.

3.      Plaintiff Jamie Snow is an individual residing in the State of Wisconsin.

4.      Defendant the Texas Health and Human Services Commission is an agency of the States of Texas.  Defendant HHSC may be served with process by serving its General Counsel, Carey Smith.  Defendant HHSC has made an appearance in this case and is represented by counsel.

5.      Defendant the Texas Department of Aging and Disability Services is an agency within HHSC.  Defendant DADS may be served with process by serving its General Counsel,

Ken Owens.  Defendant DADS has made an appearance in this case and is represented by counsel.

6.      Defendant Thomas Suehs ("Suehs") was the Executive Commissioner of the Texas Health and Human Services Commission during the time period relevant to this litigation. Defendant Suehs is being sued in his individual and official capacities pursuant to 42 U.S.C. § 1983.  Defendant Suehs may be served with process at his residence, 1800 W. 29th St., Austin, TX 78703, or wherever he may be found.  Defendant Suehs has made an appearance in this case and is represented by counsel.

7.      Defendant Christopher Traylor ("Traylor") was the Commissioner of the Texas Department of Aging and Disability Services during the time period relevant to this litigation. Defendant Traylor is being sued in his individual and official capacities pursuant to 42 U.S.C. § 1983.  Defendant Traylor may be served with process at his residence believed to be in Austin, TX, or wherever he may be found.

8.      Defendant Carol Ahmed ("Ahmed") was the Chief Operations Officer of the Texas Department of Aging and Disability Services during the time period relevant to this litigation.  Defendant Ahmed is being sued in her individual and official capacities pursuant to 42 U.S.C. § 1983.  Defendant Ahmed may be served with process at her residence, 419 Meadowgrove Lane, Adkins, TX 78101, or wherever she may be found.  Defendant Ahmed has made an appearance in this case and is represented by counsel.

9.      Defendant Steven Shotts ("Shotts") was the Regional Director for Region 3 of the Texas Department of Aging and Disability Services during the time period relevant to this litigation.  Defendant Shotts is being sued in his individual and official capacities pursuant to 42 U.S.C. § 1983.  Defendant Shotts may be served with process at his residence at 707 15th St.,

Shallowater, TX 79363.   Defendant Shotts has made an appearance in this case and is represented by counsel.

10.     Defendant Lee Persefield ("Persefield") was the Assistant Regional Director for Region 3 of the Texas Department of Aging and Disability Services during the time period relevant to this litigation.   Defendant Persefield is being sued in his individual and official capacities pursuant to 42 U.S.C. § 1983.  Defendant Persefield may be served with process at his residence, 2405 South Van Buren St., Amarillo, TX 79109, or wherever he may be found. Defendant Persefield has made an appearance in this case and is represented by counsel.

11.     Defendant Daphne Shaw ("Shaw") was a Complaint Team Program Manager for the Texas Department of Aging and Disability Services during the time period relevant to this litigation.  Defendant Shaw is being sued in her individual and official capacities pursuant to 42 U.S.C. § 1983.  Upon information and belief Defendant Shaw may be served with process at her residence in Texas, or wherever he may be found.

12.     Defendant Pam Engle ("Engle") was a Surveyor for the Texas Department of Aging and Disability Services during the time period relevant to this litigation.  Defendant Engle is being sued in her individual and official capacities pursuant to 42 U.S.C. § 1983.  Defendant Engle may be served with process at her residence, 10190 Sunridge Dr., Benbrook, TX 76126, or wherever she may be found.  Defendant Engel has made an appearance in this case and is represented by counsel.

13.     Stephanie Willms ("Willms") was a Program Manager for the Texas Department of Aging and Disability Services during the time period relevant to this litigation.  Defendant Willms is being sued in her individual and official capacities pursuant to 42 U.S.C. § 1983.

Defendant Engle may be served with process at her residence 2830 Briar Hurst Park, Houston, TX 77057, or wherever she may be found.

14.     John and Jane Doe Defendants are unidentified current or former officials and employees of the Texas Health and Human Services Commission and the Texas Department of Aging and Disability Services who took part in the acts and omissions described in this Complaint which deprived Diane Rimert of her civil rights, and/or took part in the conspiracy to deprive Diane Rimert of her civil rights, and/or committed other unknown acts and omissions which deprived Diane Rimert of her civil rights.  John and Jane Doe Defendants are being sued in their individual and official capacities.  Upon information and belief all John or Jane Doe Defendants reside in Texas.

## JURISDICTION AND VENUE

15.     This is a civil action authorized by 42 U.S.C. § 1983 to redress the deprivation of rights, privileges, and immunities guaranteed by the United States Constitution and federal law. Accordingly, this Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343.

16.     Venue is proper in Travis County, Texas, pursuant to 28 U.S.C. § 1391 because Defendants Suehs resides in Austin, Travis County, Texas and is a natural person.   Upon information and belief, all Defendants reside in the State of Texas.

## FACTUAL BACKGROUND

17.     This lawsuit involves the death of Diane Rimert,[1] a 67 year-old mentally disabled citizen of the State of Texas in a Medicare/Medicaid regulated nursing home located in Fort Worth, Texas.  Rimert's untimely death was caused by the malpractice of Pennsylvania Rehab, L.P. ("Penn. Rehab"), the nursing home in which she resided, and Texas Health Harris

---

[1] Diane Rimert was, in the relevant time period, sometimes known as Diane Snow.

Methodist, Fort Worth ("Harris Methodist"), the hospital in which she passed, and their treating physicians and other medical professionals/staff.  Rimert's untimely death was further caused by the actions of Defendants as they orchestrated a pattern and practice of failing to carry out their statutory and contractual duties under federal law, and acted to actively thwart and undermine the federal system designed to protect and guarantee Rimert's civil rights.

**A.      Neglect of Diane Rimert and Subsequent Death at Penn. Rehab.**

18.      Plaintiffs would show that Diane Rimert, deceased, was admitted to Penn. Rehab on May 12, 2009.  At the time of her admission, Rimert had a medical history of diabetes mellitus, high blood pressure, uterine cancer, and, most importantly, type 1 bipolar disorder with psychotic features.  Prior to her admission, Rimert became a ward of the state, had been adjudicated as mentally incompetent, and had been involuntarily placed in a mental health facility located in Wichita Falls, Texas.  Lon Shahidi, D.O., examined Diane Rimert and certified to the Court, in part, as follows:

> [Diane Rimert] is suffering severe and abnormal mental, emotional, or physical distress; is experiencing substantial mental or physical deterioration of his [sic] ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for his [sic] basic needs, including food, clothing, health, or safety; and, **is unable to make a rational and informed decision as to whether or not to submit to treatment**.

Physician's Certificate of Medical Examination for Mental Illness dated November 4, 2008 (emphasis added).[2]  Rimert's primary treating physician at Penn. Rehab was Dr. Adolphus Ray Lewis ("Lewis").  Medical records obtained from Penn. Rehab indicate that Penn. Rehab was aware of Diane Rimert's involuntary commitment to the Wichita Falls facility.

---

[2] Emory J. Sobiesk, M.D. made the same finding again in a Physician's Certificate of Medical Examination for Mental Illness dated January 12, 2009.  Plaintiffs are not aware of any orders declaring Ms. Rimert mentally competent or discharging her into her own care.

19.    Prior to Rimert's admission to Penn. Rehab, in August of 1998, the Texas Medical Board had restricted Lewis' medical license for "failure to practice medicine in an acceptable manner consistent with public health and welfare" relating to the over-prescription of painkillers.  These restrictions were lifted in October of 1999.  Dr. Lewis further has a history of excessive use of psycho-pharmacologic drugs on his patients in order to "pacify" them.  Dr. Lewis has been sued successfully many times for malpractice (including wrongful death).  Dr. Lewis was cited by the website ProPublica as having written over 99,000 Medicare prescriptions in 2010, the fifth-most in the country.  He also wrote over 46,000 Medicaid prescriptions in the same year.  Tracy Weber, Charles Ornstein & Jennifer LaFleur, *Medicare Drug Program Fails to Monitor Prescribers, Putting Seniors and Disabled at Risk*, PROPUBLICA, May 11, 2013, *available at* http://www.propublica.org/article/part-d-prescriber-checkup-mainbar.

20.    On November 14, 2011, Rimert developed a blister on her right heel.  This blister would fester into a pressure ulcer which would never be resolved.  Due to her diabetes mellitus and limited mobility, Rimert was particularly vulnerable to these kinds of ulcers.  The proper treatment for such an injury includes "floating" the injured area to keep it free from contact.  This can be accomplished as easily as placing pillows under the patient's legs, allowing the injured area to hang over the end of the pillow.  Throughout the course of Rimert's treatment at Penn. Rehab, her medical providers there failed to document that they "floated" the injured area in a timely and appropriate manner.  Upon information and belief, these medical providers in fact failed to "float" the pressure ulcer in a timely and appropriate manner or otherwise provide appropriate medical care for the pressure ulcer.

21.    On January 13, 2012, staff at Penn. Rehab noted a reddened area on Rimert's buttocks.  Such a reddened area can indicate the first stage of a pressure ulcer.  Proper treatment

for a pressure ulcer on this area of the body involves regularly turning and repositioning the patient every two hours to keep pressure off of the coccyx and sacral areas.  By January 19, 2012, this wound had, in fact, developed into a pressure ulcer.  Again, Penn. Rehab failed to properly document the wound and document an appropriate repositioning program for Rimert. Further, proper care requires the use of a pressure relieving mattress.  Medical records indicate that Penn. Rehab failed to provide such a mattress in a timely manner.  Upon information and belief, Rimert's medical providers in fact failed to provide appropriate medical care for the pressure ulcer.

22.     By January 31, 2012, Rimert had developed a pressure ulcer on her left heal as well.  Her pressure ulcers on the right heal and coccyx continued to progress and worsen.  Penn. Rehab again failed to document that any proper treatment of these pressure ulcers was provided. Upon information and belief, Rimert's medical providers in fact failed to provide appropriate medical care for the pressure ulcers.  These pressure ulcers would remain until Rimert's death on February 16, 2012.

23.     Pressure ulcers are an entirely preventable and treatable condition in most patients, and Rimert was not in the class of patients for whom pressure ulcers were unavoidable or untreatable.  By allowing these pressure ulcers to occur and worsen, Penn. Rehab and its medical staff fell below the standard of care.  The existence of these progressively worsening pressure ulcer infections caused Rimert significant pain, anguish, and suffering.  The continued and uncontrolled infections further contributed to Rimert's death on February 16, 2012.

24.     On or about January 20, 2012, Rimert contracted pneumonia.  On January 23, 2012, Rimert was transported to the Harris Methodist Emergency Room for treatment of her pneumonia.  During her stay at Harris, she was also diagnosed with a bacterial infection of the

blood. At the time of her transport, staff from Penn. Rehab were not able to provide any information regarding her condition other than the fact that she was seriously ill.  Rimert was moved back and forth between Penn. Rehab and Harris Methodist until her final admission to Harris Methodist on February 10, 2012, where she would remain until her death on February 16, 2012.  At the time of her admission on February 10, 2012, Rimert was unconscious.  Allowing the pneumonia to progress to the point where Rimert was unconscious before seeking further care is below the standard of care for Penn. Rehab and its staff.

25.     On January 23, 2012, staff at Penn. Rehab filled out entries on the medication sheet indicating that Rimert was given insulin and multiple other medications at 8:00 p.m. Rimert, however, had been transferred to Harris Methodist at 5:00 p.m.   These entries are accordingly false.  False entries are a violation of the Texas Board of Nursing Rules of Conduct, 22 TEX. ADMIN. CODE § 217.12(6).

26.     Staff at Harris Hospital treated Rimert pursuant to the terms of a Do Not Resuscitate Order ("DNR"), and a Medical Power of Attorney ("MPOA") designating one Doris Jarnigan ("Jarnigan"), a non-relative of Rimert, as Rimert's agent for medical decisions.  These advanced directives were obtained while Rimert was at Penn. Rehab.   Penn. Rehab required Rimert to execute these documents herself, without the advice or consent of any family member or legally appointed guardian, despite knowing that Rimert had been diagnosed with type I bipolar disorder with psychotic episodes, had been determined to be a danger to herself and others, had been made a ward of the state, and had been involuntarily committed to a state mental health facility before coming to Penn. Rehab.

27.     Accordingly, Rimert's son, Glen Frausto, informed Harris Methodist that the family believed that the DNR and MPOA were not valid when executed due to her mental illness

and legal incompetency.  Harris Methodist failed to conduct any investigation regarding the validity of the DNR or MPOA.  At the time, Harris Methodist was acutely aware of Rimert's mental health history, and noted in its records that Rimert had "[b]ipolar disorder by history, significant mental health history."

28.     Based upon the DNR, and the decisions of Jarnigan under the MPOA, intubation and other life-saving treatment was withheld from Rimert over the objections of Rimert's natural children, Glen and Greg Frausto.  The decision to withhold life-saving treatment directly led to Rimert's untimely death on February 16, 2012.  Further, Penn. Rehab allowed the pressure ulcers to develop to the point where it became difficult if not impossible for Rimert to consume sufficient calories to be able to successfully fight the infection and the pneumonia.  At the time of her death Rimert was only 67 years of age.

**B.     Individuals Acting Under Color of Authority of Texas HHSC and DADS Deliberately Undermined the Federal System Created to Protect Residents of Texas Nursing Homes.**

29.     Rimert, like all United States Citizens, had a right to life recognized by the Fifth, Ninth and Fourteenth Amendments to the United States Constitution, a right that has been recognized as far back as the U.S. Declaration of Independence.  Rimert further had a right to humane treatment and appropriate medical care under the Nursing Home Reform Amendments ("NHRA") to the Social Security Act, 42 U.S.C. §§ 301, *et seq*.  In addition, Rimert had a right to the provision of medical services and benefits to her under the Medicare, Medicaid, and Social Security Acts, and in particular to "reasonable promptness" in the provision of Medicaid benefits to her as the State of Texas has chosen to participate in the Medicaid Program and receive federal funding.  42 U.S.C. § 1396a(a)(8).

30.     Medicaid is a cooperative federal-state program through which the federal government provides financial aid to states that furnish medical assistance to eligible low-income individuals.  While the Medicaid program is voluntary, once a state chooses to participate it must follow regulations contained within the Medicaid Act and its implementing regulations.  The United States Secretary for the Department of Health and Human Services has delegated his federal administrative authority to the Centers for Medicare and Medicaid Services ("CMS"), an agency within the Department.

31.     To qualify for federal assistance, a state must submit and have approved a state plan for medical assistance which covers topics such as the surveying and enforcement of federal regulations for medical providers who participate in Medicaid, and a system for reimbursement of medical care providers.  Texas has elected to participate in Medicaid under such a plan, and the Texas plan is currently administered by the Texas Health and Human Services Commission ("HHSC").  The Texas Department of Aging and Disability Services ("DADS"), an agency within HHSC, conducts surveying and enforcement of federal regulations for nursing homes participating in the Medicaid Program, including Penn. Rehab.  During the relevant time period Diane Rimert received benefits from both the Medicare and Medicaid programs.

32.     Section 1396a(a)(8) of the Medicaid Act holds that a state plan for medical assistance must "provide that all individuals wishing to make application for medical assistance under the plan shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  Federal courts have held that the right to receive assistance with "reasonable promptness" is a federal right enforceable through 42 U.S.C. § 1983.  *See, e.g., Romano v. Greenstein*, 721 F.3d 373 (5th Cir. 2013).  The Medicaid,

Medicare, and Social Security Acts contain additional rights enforceable through 42 U.S.C. § 1983.

33.    In 1987 Congress passed the NHRA to improve the oversight and inspection of nursing homes that participate in the Medicare and Medicaid programs.  The requirements for certification include satisfying certain standards in areas such as "quality of care" and "resident rights."  *See* 42 U.S.C. §§ 1395i & 1395r.  Among the rights which are relevant to this lawsuit are: (a) care which will promote, maintain and enhance the quality of life of residents; (b) care which will obtain the highest practicable physical, mental and psychosocial well-being for residents; (c) nutritional services which meet the daily dietary needs and any special dietary needs of the residents; (d) maintenance of appropriate medical records; and (e) the right to be free from chemical restraints and to have psycho-pharmacologic drugs administered for treatment rather than disciplinary purposes.  *Id.*  Federal courts have held that the NHRA gives rise to federal rights enforceable through 42 U.S.C. § 1983.  *See, e.g., Grammer v. John*, 570 F.3d 520 (3rd Cir. 2009).

34.    The Medicaid Act and its implementing regulations provide for an elaborate system of surveying and supervision of medical providers such as Penn. Rehab who participate in the Medicaid program.  The purpose of this system is to enforce the rights described above, and to ensure that residents of nursing homes are provided appropriate medical care and humane treatment.  The surveying and enforcement system is principally handled by DADS, guided by federal regulations found at 42 C.F.R. §§ 488.1, *et seq*., and under the supervision of CMS. DADS is required to conduct regular surveys of nursing homes, investigate complaints, remedy and enforce instances of misconduct by nursing homes, and certify its results to CMS.  In

exchange, the State of Texas receives federal funding in the form of Federal Financial Participation ("FFP").

35.     In direct contravention to their obligations under Federal law, and under the Texas state plan for medical assistance with CMS, the Defendants deliberately orchestrated and/or participated in a scheme to sabotage the federal system designed to protect the rights of nursing home patients such as Diane Rimert.   These efforts at sabotage included the falsification of documents relating to surveying and enforcement actions, the intimidation of and retaliation against state officials attempting to enforce federal policy, and the creation of a culture which completely undermined the regulatory system created by the federal government in the Medicare, Medicaid, and Social Security Acts.   The result of this sabotage is that Diane Rimert was not provided the medical care she was entitled to under the Acts, was kept in inhumane conditions, and ultimately died from this abuse.

36.     The conduct complained of appears to have principally begun with the appointment of Defendant Steven Shotts as Regional Director for DADS Region 3, the region which covers the Dallas-Fort Worth Metroplex.   Shotts brought Assistant Regional Director Lee Persefield with him to Region 3.   Upon information and belief, Shotts was appointed at the behest of Defendant Ahmed.

37.     Under Shotts' regime, significant changes were made in how Region 3 performed its oversight duties of nursing homes located in the region.   Shotts immediately terminated longtime surveyors (i.e. investigators) and replaced them with individuals who were not qualified to do the work.   Shotts and Persefield then increased the workload of the remaining surveyors such that it was impossible to conduct the investigations according to the guidelines provided by CMS.

---

38.     More disturbingly, in order to hide the effect of these changes from CMS, Shotts and Persefield instructed the surveyors under their direction to lie and falsify documents to hide these changes from CMS.  For instance, surveyors would be instructed to simply walk down the hallway of a nursing home and then indicate that an 'onsite visit' had been conducted.  Surveyors would also be instructed to change the dates of investigations to indicate that they had been conducted in a timely manner, when in fact they had not.  Further, surveyors would be instructed to alter the outcomes of investigations to hide violations from CMS.  Upon information and belief, these falsified reports were forwarded onto CMS.

39.     The most disturbing changes involve the manner in which Region 3 handled "immediate jeopardy" situations.  An immediate jeopardy situation is "a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death to a resident."  42 C.F.R. § 489.3.  The CMS State Operations Manual clarifies that an immediately jeopardy situation can exist even if only one individual is at risk.  CMS State Operations Manual, Appendix Q (Rev. 5-21-04).  The State Operations Manual further states that serious harm or death need not occur before an immediate jeopardy situation exists, but only a "high potential" for such an outcome needs to be present.  *Id.*  Once an immediate jeopardy situation is identified, federal regulations mandate that the state either immediately appoint a temporary manager to remove the immediate jeopardy situation, or terminate the provider agreement with the facility.  Failure to cooperate with the temporary manager also results in a termination of the provider agreement.  42 C.F.R. § 488.410.

40.     CMS mandates training regarding how to conduct surveys, including how to identify and handle immediate jeopardy situations.  Surveyors who have completed this training and who are qualified to conduct such surveys are known as Surveyor Minimum Qualified

Trained Certified ("SMQT Certified").  Pursuant to 42 C.F.R. § 488.314(c), an individual may not be part of a survey team unless he or she possesses this mandatory training,

41.     Under the direction of Shotts, DADS managers who were not medical professionals and/or who were not SMQT Certified regularly overruled SMQT Certified medical professional surveyors who wished to call immediate jeopardy situations, in flagrant disregard to the CMS policies and guidelines for immediate jeopardy situations.  Among the non-SMQT Certified managers overruling the surveyors are Defendant Shotts himself and Defendant Shaw. In addition, Shotts and Persefield have assigned untrained and uncertified surveyors to conduct surveys.  As a direct result, nursing home patients in Texas who were in immediate danger of death or serious bodily harm were not receiving the care that they need, and nursing homes who put the lives and health of these Texas residents at risk were allowed to continue these practices.

42.     Defendants Shotts, Persefield, Ahmed, and other DADS and HHSC officials were aware of these changes taking place in Region 3 and either facilitated them, or were consciously indifferent to Diane Rimert's rights and did nothing to prevent the changes from occurring and continuing to occur.  In particular, Shotts, Persefield and Ahmed demonstrated a pattern and practice of retaliation against those DADS surveyors and employees who complained of this situation.   Defendant Ahmed would inform Defendants Shotts and Persefield of DADS employees who complained of the above practices, and Shotts and Persefield would either terminate these employees, or through direct intimidation inform the employees that they were aware of the complaint and create such a hostile work environment as to constructively terminate the whistleblowers.  Upon information and belief the complaints were so numerous, and the policies in Region 3 so notorious within the department that Defendants Traylor and Suehs were

aware of the activities and encouraged them, and/or failed to take any corrective action to prevent them.

**C.  Defendants' Actions to Undermine the Federal Protections for Texas Nursing Home Residents Directly Led to the Mistreatment and Death of Diane Rimert.**

43.  On or about January 23, 2012, Diane Rimert's son, Plaintiff Glen Frausto, contacted the Texas Governor's office regarding the poor treatment Diane Rimert was receiving at Penn. Rehab.  This complaint was referred to DADS for investigation.  A DADS investigative report indicates that Surveyor/Defendant Engles conducted an investigation and visited the facility on January 31, 2012.  Defendant Engles and Defendants Willms drafted a report which concluded that the allegations of mistreatment and lack of proper medical care were unsubstantiated.  Defendant Shotts communicated the results of the investigation to Glen Frausto.  Glen Frausto continued to call DADS to attempt to get DADS to take action up until his mother's death on February 16, 2012.  Upon information and belief this investigation suffered from the same deficiencies as were occurring generally within Region 3, namely that the investigation was not conducted and/or was not conducted in accordance to federal guidelines and/or was falsified and/or was conducted/altered by unqualified surveyors/managers.

44.  Had a survey been conducted in accordance with federal guidelines as required by CMS, an immediately jeopardy situation would have been called.  In connection with a currently pending state-law claim filed in the District Court of Dallas County, Texas by Plaintiffs against Diane Rimert's medical providers, Plaintiffs have retained medical experts to testify as to the medical treatment received by Diane Rimert.  Lige B. Rushing, M.D., and S. Frances Scholl Foster, MSN, APRN, BC are medical professionals specializing in the care for elderly patients such as Diane Rimert.  Both experts have submitted reports demonstrating that Diane Rimert's medical needs were not being met, and in particular her needs for her pressure ulcers and

nutritional needs were not being met.  Both experts have further indicated that Penn. Rehab fell below the standard of care, and that medical professionals trained to treat patients like Ms. Rimert would have known that the treatment fell below the standards of care.

45.     Further, treatment and prevention of pressure ulcers is one of the most basic elements of patient care taught to all doctors, nurses, and similar medical professionals.  Any duly licensed doctor, nurse, or similar medical professional would know that for the typical patient, pressure ulcers should not develop if appropriate medical care is being provided.  If pressure ulcers did develop, appropriate medical care should have shortly resolved the pressure ulcers.[3]  Diane Rimert's pressure ulcers, which were ongoing *and worsening* since November of 2011, would have been a red flag to any surveyor who examined the situation in any depth (including a cursory examination of Diane Rimert's medical records).  Federal regulations require that survey teams include at least one registered nurse.  42 C.F.R. § 488.314.

46.     Accordingly, a properly trained surveyor, following the applicable guidelines, knew or should have known that Diane Rimert was in immediate jeopardy, that due to her mental incompetence she was a ward of the state and not able to protect herself, and would have so-called an immediate jeopardy situation.[4]  By the time of the January 31, 2012 visit, Diane Rimert's pressure ulcers had progressed to an extremely dangerous and life threatening situation. Pursuant to 42 C.F.R. § 488.410, once the immediate jeopardy was called, a temporary manager would have been appointed to remedy the immediate jeopardy situation, or Penn. Rehab's provider agreement for Medicare/Medicaid would have been terminated and Diane Rimert would have been moved to an alternate facility.  In either case, Diane Rimert would have then received

---

[3] Pressure ulcers can develop and continue to fester despite appropriate medical care in patients with certain complications.  According to Dr. Rushing, Diane Rimert was not in that category of patients, and therefore proper medical treatment should have prevented the pressure ulcers or, at a minimum, resolved them in a timely fashion.
[4] DADS and HHSC were on notice that Diane Rimert was mentally incompetent and a ward of the state because she had been so adjudicated in a Texas state court.

the medical treatment she was entitled to in a reasonably prompt manner.  As an immediate jeopardy was not called, no corrective action was taken and Diane Rimert died on February 16, 2012.

47.     Even if DADS did not conduct a proper survey of Penn. Rehab, if Defendants had been accurate in reporting the manner in which they had been conducting surveys of nursing homes, rather than falsifying documents to give the appearance of compliance with federal requirements, the lack of compliance would have warned CMS that DADS was not complying with federal regulations, and would have given CMS the opportunity to step in and remedy the situation.  Plaintiffs are aware of instances in Region 3 where CMS became aware of the inadequacies of the state surveyors and has taken over the investigation with federal surveyors.  Again, a federal surveyor following federal guidelines would have called an immediate jeopardy for Diane Rimert.

48.     Consequently, the actions taken by Defendants have directly undermined the federal system designed to protect the rights of nursing home patients such as Diane Rimert.  Because the system was undermined, an immediate jeopardy was not called in time to save Diane Rimert.  Defendants have thus deprived Diane Rimert of her federal rights under the Fourteenth Amendment, Fifth Amendment, Social Security Act, and Medicare Act under color of their authority as officials and employees of HHSC and DADS.  In the alternative, Defendants were aware of the threat to Rimert and acted with deliberate indifference to Diane Rimert's rights.[5]

## FIRST CAUSE OF ACTION: WRONGFUL DEATH DUE TO DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983
### (1983 Defendants)

---

[5] Plaintiffs also note that DADS has failed to respond to their January 15, 2014 public records request pursuant to the Texas Public Information Act § 6252-17a *et seq*.

49.     Plaintiffs incorporate paragraphs 1 through 48 as though fully rewritten herein.

50.     Diane Rimert had a right to life protected by the Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution, and which is recognized as far back as the U.S. Declaration of Independence.  Diane Rimert further had a right to adequate medical care and the funding necessary for adequate medical care pursuant to the Medicare and Medicaid and Social Security Acts in general, and the reasonably prompt provision of Medicaid services found in 42 U.S.C. § 1396(a)(8) in particular.  Diane Rimert further had a right to appropriate medical care and humane treatment while in a nursing home pursuant to 42 U.S.C. §§ 1395i & 1395r.  These Constitutional and statutory provisions give rise to rights enforceable pursuant to 42 U.S.C. § 1983.

51.     Pursuant to the Social Security Act, Medicare Act, Medicaid Act, and the Texas state plan for medical assistance, Texas was obligated to provide a system of certification and enforcement.  This system was to include investigations of nursing homes to ensure that nursing home residents were receiving appropriate medical care and humane treatment, and were receiving such care with reasonable promptness.  The 1983 Defendants' actions described above, including but not limited to false reporting, the manipulation of documents, failure to investigate and/or properly investigate nursing homes, failure to investigate and/or properly investigate complaints, use of unqualified surveyors, overruling determinations of qualified surveyors by unqualified managers, creation of unreasonable workloads for supervisors, and the retaliation and intimidation of whistleblowers, constitute an active attempt to undermine the federal system designed to protect Diane Rimert's federal rights.  In the alternative, the 1983 Defendants were aware of the threat to Rimert's federal rights created by their acts and omissions, and thus acted with deliberate indifference to Rimert's federal rights.

52.     The acts and omissions of the 1983 Defendants described in this Complaint were negligent and grossly negligent.

53.     The 1983 Defendants' actions allowed nursing homes such as Penn. Rehab to deliver substandard care to their residents, including Diane Rimert.  Had the 1983 Defendants performed their surveying and investigatory obligations under federal law, Penn. Rehab would have had to provide the necessary care to Diane Rimert, or lose their Medicare/Medicaid eligibility and transfer Diane Rimert to an eligible facility.

54.     The 1983 Defendants' actions resulted in the failure to call an immediate jeopardy when Plaintiff Glen Frausto informed DADS that Diane Rimert was in serious peril in violation of clear federal guidelines indicating that an immediate jeopardy situation existed.  Had an immediate jeopardy been called, a temporary manager would have taken over and provided Diane Rimert with the necessary care, or Penn. Rehab would have lost their Medicare/Medicaid eligibility and had to transfer Diane Rimert to an eligible facility.

55.     The 1983 Defendants' actions, and in particular the manipulation of documents and false reporting, prevented federal CMS officials from being aware of the problem in DADS Region 3 and denied CMS the opportunity to step in and provide federal enforcement.  Federal investigators, going on the federal guidelines, would have recognized the substandard care being provided at Penn. Rehab, and in particular the immediate jeopardy situation, and would have taken the necessary steps to rectify the situation.

56.     Due to these acts and omissions by the 1983 Defendants, Diane Rimert did not receive appropriate medical care and humane treatment for her pressure ulcers, nutritional needs, and other medical needs in violation of the NHRA, did not receive said care with reasonable

promptness in violation of the Social Security Act, and was ultimately deprived of her right to life.

57.     Plaintiff Greg Frausto is the natural son of Diane Rimert, and has been duly appointed as administrator of her estate by the Probate Court No. 2 of Tarrant County Texas, in a probate action styled *In re Estate of Diane Jean Rimert Deceased*, Cause No. 2012-PRO3039-2. Plaintiff Greg Frausto seeks recovery of those elements of damage which survive her death pursuant to TEX. CIV. PRAC. & REM. CODE § 71.021, which is incorporated by 42 U.S.C. § 1988. Those damages sustained by Ms. Rimert that are recoverable by her estate include the following:

(a) Physical pain suffered by Diane Rimert as a result of her injuries prior to her death;
(b) Mental anguish suffered by Diane Rimert as a result of her injuries prior to her death;
(c) Reasonable and necessary medical expenses;
(d) Disfigurement;
(e) Physical impairment;
(f) Funeral and burial expenses; and
(g) Exemplary damages.

### SECOND CAUSE OF ACTION: WRONGFUL DEATH DUE TO A CONSPIRACY TO DEPRIVE RIGHTS UNDER 42 U.S.C. § 1983
**(1983 Defendants)**

58.     Plaintiffs incorporate paragraphs 1 through 57 as though fully rewritten herein.

59.     Diane Rimert had a right to life protected by the Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution, and which is recognized as far back as the U.S. Declaration of Independence. Diane Rimert further had a right to adequate medical care and the funding necessary for adequate medical care pursuant to the Medicare and Medicaid and Social Security Acts in general, and the reasonably prompt provision of Medicaid services found in 42 U.S.C. § 1396(a)(8) in particular. Diane Rimert further had a right to appropriate medical care and humane treatment while in a nursing home pursuant to 42 U.S.C. §§ 1395i & 1395r. These

Constitutional and statutory provisions give rise to rights enforceable pursuant to 42 U.S.C. § 1983.

60.     Pursuant to the Social Security Act, Medicare Act, Medicaid Act, and the Texas state plan for medical assistance, Texas was obligated to provide a system of certification and enforcement.  This system was to include investigations of nursing homes to ensure that nursing home residents were receiving appropriate medical care and humane treatment, and were receiving such care with reasonable promptness.  The 1983 Defendants' actions described above, including but not limited to false reporting, the manipulation of documents, failure to investigate and/or properly investigate nursing homes, failure to investigate and/or properly investigate complaints, use of unqualified surveyors, overruling determinations of qualified surveyors by unqualified managers, creation of unreasonable workloads for supervisors, and the retaliation and intimidation of whistleblowers, constitute an active attempt to undermine the federal system designed to protect Diane Rimert's federal rights.  In the alternative, the 1983 Defendants were aware of the threat to Rimert's federal rights created by their acts and omissions, and thus acted with deliberate indifference to Rimert's federal rights.

61.     The acts and omissions of the 1983 Defendants described in this Complaint were negligent and grossly negligent.

62.     The 1983 Defendants' actions allowed nursing homes such as Penn. Rehab to deliver substandard care to their residents, including Diane Rimert.  Had the 1983 Defendants performed their surveying and investigatory obligations under federal law, Penn. Rehab would have had to provide the necessary care to Diane Rimert, or lose their Medicare/Medicaid eligibility and transfer Diane Rimert to an eligible facility.

63.     The 1983 Defendants' actions resulted in the failure to call an immediate jeopardy when Plaintiff Glen Frausto informed DADS that Diane Rimert was in serious peril in violation of clear federal guidelines indicating that an immediate jeopardy situation existed.  Had an immediate jeopardy been called, a temporary manager would have taken over and provided Diane Rimert with the necessary care, or Penn. Rehab would have lost their Medicare/Medicaid eligibility and had to transfer Diane Rimert to an eligible facility.

64.     The 1983 Defendants' actions, and in particular the manipulation of documents and false reporting, prevented federal CMS officials from being aware of the problem in DADS Region 3 and denied CMS the opportunity to step in and provide federal enforcement.  Federal investigators, going on the federal guidelines, would have recognized the substandard care being provided at Penn. Rehab, and in particular the immediate jeopardy situation, and would have taken the necessary steps to rectify the situation.

65.     These acts and omissions by the 1983 Defendants were the result of an agreement and conspiracy amongst the 1983 Defendants to undermine the federal system designed to protect Diane Rimert's federal rights.   The 1983 Defendants had a common objective to undermine the federal system designed to protect Diane Rimert's federal rights, and one or more of the 1983 Defendants took action to further the common scheme.

66.     Due to these acts and omissions by the 1983 Defendants, Diane Rimert did not receive appropriate medical care and humane treatment for her pressure ulcers, nutritional needs, and other medical needs in violation of the NHRA, did not receive said care with reasonable promptness in violation of the Social Security Act, and was ultimately deprived of her right to life.

67.     Plaintiff Greg Frausto is the natural son of Diane Rimert, and has been duly appointed as administrator of her estate by the Probate Court No. 2 of Tarrant County Texas, in a probate action styled *In re Estate of Diane Jean Rimert Deceased*, Cause No. 2012-PRO3039-2. Plaintiff Greg Frausto seeks recovery of those elements of damage which survive her death pursuant to TEX. CIV. PRAC. & REM. CODE § 71.021, which is incorporated by 42 U.S.C. § 1988. Those damages sustained by Ms. Rimert that are recoverable by her estate include the following:

> (a) Physical pain suffered by Diane Rimert as a result of her injuries prior to her death;
> (b) Mental anguish suffered by Diane Rimert as a result of her injuries prior to her death;
> (c) Reasonable and necessary medical expenses;
> (d) Disfigurement;
> (e) Physical impairment;
> (f) Funeral and burial expenses; and
> (g) Exemplary damages.

## THIRD CAUSE OF ACTION: SURVIVAL ACTION DUE TO DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983
### (1983 Defendants)

68.     Plaintiffs incorporate paragraphs 1 through 67 as though fully rewritten herein.

69.     Diane Rimert had a right to life protected by the Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution, and which is recognized as far back as the U.S. Declaration of Independence.  Diane Rimert further had a right to adequate medical care and the funding necessary for adequate medical care pursuant to the Medicare and Medicaid and Social Security Acts in general, and the reasonably prompt provision of Medicaid services found in 42 U.S.C. § 1396(a)(8) in particular.  Diane Rimert further had a right to appropriate medical care and humane treatment while in a nursing home pursuant to 42 U.S.C. §§ 1395i & 1395r.  These Constitutional and statutory provisions give rise to rights enforceable pursuant to 42 U.S.C. § 1983.

70.     Pursuant to the Social Security Act, Medicare Act, Medicaid Act, and the Texas state plan for medical assistance, Texas was obligated to provide a system of certification and enforcement.  This system was to include investigations of nursing homes to ensure that nursing home residents were receiving appropriate medical care and humane treatment, and were receiving such care with reasonable promptness.  The 1983 Defendants' actions described above, including but not limited to false reporting, the manipulation of documents, failure to investigate and/or properly investigate nursing homes, failure to investigate and/or properly investigate complaints, use of unqualified surveyors, overruling determinations of qualified surveyors by unqualified managers, creation of unreasonable workloads for supervisors, and the retaliation and intimidation of whistleblowers, constitute an active attempt to undermine the federal system designed to protect Diane Rimert's federal rights.  In the alternative, the 1983 Defendants were aware of the threat to Rimert's federal rights created by their acts and omissions, and thus acted with deliberate indifference to Rimert's federal rights.

71.     The acts and omissions of the 1983 Defendants described in this Complaint were negligent and grossly negligent.

72.     The 1983 Defendants' actions allowed nursing homes such as Penn. Rehab to deliver substandard care to their residents, including Diane Rimert.  Had the 1983 Defendants performed their surveying and investigatory obligations under federal law, Penn. Rehab would have had to provide the necessary care to Diane Rimert, or lose their Medicare/Medicaid eligibility and transfer Diane Rimert to an eligible facility.

73.     The 1983 Defendants' actions resulted in the failure to call an immediate jeopardy when Plaintiff Glen Frausto informed DADS that Diane Rimert was in serious peril in violation of clear federal guidelines indicating that an immediate jeopardy situation existed.  Had an

immediate jeopardy been called, a temporary manager would have taken over and provided Diane Rimert with the necessary care, or Penn. Rehab would have lost their Medicare/Medicaid eligibility and had to transfer Diane Rimert to an eligible facility.

74.     The 1983 Defendants' actions, and in particular the manipulation of documents and false reporting, prevented federal CMS officials from being aware of the problem in DADS Region 3 and denied CMS the opportunity to step in and provide federal enforcement.  Federal investigators, going on the federal guidelines, would have recognized the substandard care being provided at Penn. Rehab, and in particular the immediate jeopardy situation, and would have taken the necessary steps to rectify the situation.

75.     Due to these acts and omissions by the 1983 Defendants, Diane Rimert did not receive appropriate medical care and humane treatment for her pressure ulcers, nutritional needs, and other medical needs in violation of the NHRA, did not receive said care with reasonable promptness in violation of the Social Security Act, and was ultimately deprived of her right to life.

76.     As the natural children and sole surviving beneficiaries of the Texas Wrongful Death Statute, TEX. CIV. PRAC. & REM. CODE §§ 71.001 *et seq*., which is incorporated pursuant to 42  U.S.C. § 1988, Plaintiffs, in their individual capacities are entitled to recover the following damages:

(a) The loss of the positive benefits flowing from the love, comfort, guidance, companionship, and society that they would have received from Rimert;
(b) The emotional pain, torment, and suffering experienced by them because of the death of Rimert, and will continue to suffer in the future; and
(c) Exemplary damages.

### FOURTH CAUSE OF ACTION: SURVIVAL ACTION DUE TO A CONSPIRACY TO DEPRIVE RIGHTS UNDER 42 U.S.C. § 1983
**(1983 Defendants)**

77.     Plaintiffs incorporate paragraphs 1 through 76 as though fully rewritten herein.

78.     Diane Rimert had a right to life protected by the Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution, and which is recognized as far back as the U.S. Declaration of Independence.  Diane Rimert further had a right to adequate medical care and the funding necessary for adequate medical care pursuant to the Medicare and Medicaid and Social Security Acts in general, and the reasonably prompt provision of Medicaid services found in 42 U.S.C. § 1396(a)(8) in particular.  Diane Rimert further had a right to appropriate medical care and humane treatment while in a nursing home pursuant to 42 U.S.C. §§ 1395i & 1395r.  These Constitutional and statutory provisions give rise to rights enforceable pursuant to 42 U.S.C. § 1983.

79.     Pursuant to the Social Security Act, Medicare Act, Medicaid Act, and the Texas state plan for medical assistance, Texas was obligated to provide a system of certification and enforcement.  This system was to include investigations of nursing homes to ensure that nursing home residents were receiving appropriate medical care and humane treatment, and were receiving such care with reasonable promptness.  The 1983 Defendants' actions described above, including but not limited to false reporting, the manipulation of documents, failure to investigate and/or properly investigate nursing homes, failure to investigate and/or properly investigate complaints, use of unqualified surveyors, overruling determinations of qualified surveyors by unqualified managers, creation of unreasonable workloads for supervisors, and the retaliation and intimidation of whistleblowers, constitute an active attempt to undermine the federal system designed to protect Diane Rimert's federal rights.  In the alternative, The 1983 Defendants were aware of the threat to Rimert's federal rights created by their acts and omissions, and thus acted with deliberate indifference to Rimert's federal rights.

---

80.     The acts and omissions of the 1983 Defendants described in this Complaint were negligent and grossly negligent.

81.     The 1983 Defendants' actions allowed nursing homes such as Penn. Rehab to deliver substandard care to their residents, including Diane Rimert.  Had the 1983 Defendants performed their surveying and investigatory obligations under federal law, Penn. Rehab would have had to provide the necessary care to Diane Rimert, or lose their Medicare/Medicaid eligibility and transfer Diane Rimert to an eligible facility.

82.     The 1983 Defendants' actions resulted in the failure to call an immediate jeopardy when Plaintiff Glen Frausto informed DADS that Diane Rimert was in serious peril in violation of clear federal guidelines indicating that an immediate jeopardy situation existed.  Had an immediate jeopardy been called, a temporary manager would have taken over and provided Diane Rimert with the necessary care, or Penn. Rehab would have lost their Medicare/Medicaid eligibility and had to transfer Diane Rimert to an eligible facility.

83.     The 1983 Defendants' actions, and in particular the manipulation of documents and false reporting, prevented federal CMS officials from being aware of the problem in DADS Region 3 and denied CMS the opportunity to step in and provide federal enforcement.  Federal investigators, going on the federal guidelines, would have recognized the substandard care being provided at Penn. Rehab, and in particular the immediate jeopardy situation, and would have taken the necessary steps to rectify the situation.

84.     These acts and omissions by the 1983 Defendants were the result of an agreement and conspiracy amongst the 1983 Defendants to undermine the federal system designed to protect Diane Rimert's federal rights.   The 1983 Defendants had a common objective to

undermine the federal system designed to protect Diane Rimert's federal rights, and one or more of the 1983 Defendants took action to further the common scheme.

85.     Due to these act and omissions by the 1983 Defendants, Diane Rimert did not receive appropriate medical care and humane treatment for her pressure ulcers, nutritional needs, and other medical needs in violation of the NHRA, did not receive said care with reasonable promptness in violation of the Social Security Act, and was ultimately deprived of her right to life.

86.     As the natural children and sole surviving beneficiaries of the Texas Wrongful Death Statute, TEX. CIV. PRAC. & REM. CODE §§ 71.001 *et seq.*, which is incorporated pursuant to 42 U.S.C. § 1988, Plaintiffs in their individual capacities are entitled to recover the following damages:

> (a) The loss of the positive benefits flowing from the love, comfort, guidance, companionship, and society that they would have received from Rimert;
> (b) The emotional pain, torment, and suffering experienced by them because of the death of Rimert, and will continue to suffer in the future; and
> (c) Exemplary damages.

## FIFTH CAUSE OF ACTION: NEGLIGENCE AND GROSS NEGLIGENCE UNDER TEXAS COMMON LAW
### (HHSC, DADS, and All Other Defendants in their Official Capacities)

87.     Plaintiffs incorporate paragraphs 1 through 86 as though fully rewritten herein.

88.     Plaintiffs plead a cause of action for negligence and gross negligence against HHSC, DADS, and all other Defendants in their official capacities.

89.     Defendants' actions described above, including but not limited to false, reckless, and/or incompetent reporting, the manipulation of documents, failure to investigate nursing homes, including failure to investigate and/or properly investigate complaints and immediate jeopardies (and in particular the immediate jeopardy of Diane Rimert), the use of unqualified

surveyors, overruling determinations of qualified surveyors by unqualified managers, creation of unreasonable workloads for supervisors, and the retaliation and intimidation of whistleblowers, constitutes recklessness, gross negligence and/or negligence.

90.     The individual Defendants were acting within the course and scope of their positions as officials and/or employees of the State of Texas, HHSC, and/or DADS.  Defendants' acts and omissions described in this Complaint took place within their actual authority and/or their apparent authority and the State of Texas, HHSC, and/or DADS are vicariously liable for said acts and omissions.

91.     Defendants' acts and omissions, when viewed objectively from their standpoint at the time they occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and/or Defendants had actual, subjective awareness of the risks but proceeded with a conscious indifference to the rights, safety, or welfare of others. Defendants' acts and omissions thus constitute gross negligence.

92.     The negligence and/or gross negligence and/or recklessness of Defendants proximately caused Diane Rimert to suffer unnecessarily from mistreatment, including but not limited to her pressure ulcers and pneumonia, and proximately caused her untimely death.

93.     Plaintiff Greg Frausto is the natural son of Diane Rimert, and has been duly appointed as administrator of her estate by the Probate Court No. 2 of Tarrant County Texas, in a probate action styled *In re Estate of Diane Jean Rimert Deceased*, Cause No. 2012-PRO3039-2. Plaintiff Greg Frausto seeks recovery of those elements of damage which survive her death pursuant to TEX. CIV. PRAC. & REM. CODE § 71.021.  Those damages sustained by Ms. Rimert that are recoverable by her estate include the following:

(a) Physical pain suffered by Diane Rimert as a result of her injuries prior to her death;
(b) Mental anguish suffered by Diane Rimert as a result of her injuries prior to her death;

(c) Reasonable and necessary medical expenses;
(d) Disfigurement;
(e) Physical impairment;
(f) Funeral and burial expenses; and
(g) Exemplary damages.

94.     As the natural children and sole surviving beneficiaries of the Texas Wrongful

Death Statute, TEX. CIV. PRAC. & REM. CODE §§ 71.001 *et seq.*, Plaintiffs, in their individual

capacities are entitled to recover the following damages:

(a) The loss of the positive benefits flowing from the love, comfort, guidance,
companionship, and society that they would have received from Rimert;
(b) The emotional pain, torment, and suffering experienced by them because of the death
of Rimert, and will continue to suffer in the future; and
(c) Exemplary damages.

### SIXTH CAUSE OF ACTION:
### CIVIL CONSPIRACY UNDER TEXAS COMMON LAW
### (HHSC, DADS, and All Other Defendants in their Official Capacities)

95.     Plaintiffs incorporate paragraphs 1 through 94 as though fully rewritten herein.

96.     Plaintiffs plead a cause of action for civil conspiracy against HHSC, DADS, and

all other Defendants in their official capacities.

97.     Defendants' actions described above, including but not limited to false, reckless,

and/or incompetent reporting, the manipulation of documents, failure to investigate nursing

homes, including failure to investigate and/or properly investigate complaints and immediate

jeopardies (and in particular the immediate jeopardy of Diane Rimert), the use of unqualified

surveyors, overruling determinations of qualified surveyors by unqualified managers, creation of

unreasonable workloads for supervisors, and the retaliation and intimidation of whistleblowers,

constitutes recklessness, gross negligence and/or negligence.

98.     The individual Defendants were acting within the course and scope of their

positions as officials and/or employees of the State of Texas, HHSC, and/or DADS.  Defendants'

---

acts and omissions described in this Complaint took place within their actual authority and/or their apparent authority and the State of Texas, HHSC, and/or DADS are vicariously liable for said acts and omissions.

99.     The acts and omissions by the Defendants described in this Complaint were the result of an agreement and conspiracy amongst the Defendants to undermine the federal system designed to protect Diane Rimert's federal rights.  The Defendants had a common objective to undermine the federal system designed to protect Diane Rimert's federal rights, and/or had a common objective to take the actions described in this Complaint which were negligent, grossly negligent, or reckless, and which deprived Diane Rimert of her federal rights, and one or more of the Defendants took action to further the common scheme.

100.    Defendants' acts and omissions, when viewed objectively from their standpoint at the time they occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and/or Defendants had actual, subjective awareness of the risks but proceeded with a conscious indifference to the rights, safety, or welfare of others. Defendants' acts and omissions thus constitute gross negligence.

101.    The negligence and/or gross negligence and/or recklessness of Defendants proximately caused Diane Rimert to suffer unnecessarily from mistreatment, including but not limited to her pressure ulcers and pneumonia, and proximately caused her untimely death.

102.    Plaintiff Greg Frausto is the natural son of Diane Rimert, and has been duly appointed as administrator of her estate by the Probate Court No. 2 of Tarrant County Texas, in a probate action styled *In re Estate of Diane Jean Rimert Deceased*, Cause No. 2012-PRO3039-2. Plaintiff Greg Frausto seeks recovery of those elements of damage which survive her death

pursuant to TEX. CIV. PRAC. & REM. CODE § 71.021.  Those damages sustained by Ms. Rimert

that are recoverable by her estate include the following:

    (a) Physical pain suffered by Diane Rimert as a result of her injuries prior to her death;
    (b) Mental anguish suffered by Diane Rimert as a result of her injuries prior to her death;
    (c) Reasonable and necessary medical expenses;
    (d) Disfigurement;
    (e) Physical impairment;
    (f) Funeral and burial expenses; and
    (g) Exemplary damages.

103.    As the natural children and sole surviving beneficiaries of the Texas Wrongful

Death Statute, TEX. CIV. PRAC. & REM. CODE §§ 71.001 *et seq*., Plaintiffs, in their individual

capacities are entitled to recover the following damages:

    (a) The loss of the positive benefits flowing from the love, comfort, guidance,
    companionship, and society that they would have received from Rimert;
    (b) The emotional pain, torment, and suffering experienced by them because of the death
    of Rimert, and will continue to suffer in the future; and
    (c) Exemplary damages.

## WAIVER OF SOVEREIGN IMMUNITY

104.    Plaintiffs incorporate paragraphs 1 through 103 as though fully rewritten herein.

105.    Pursuant to Texas Civil Practices and Remedies Code § 101.021, Texas has

waived sovereign immunity for the Defendants in their official capacities.

106.    Defendants injured Diane Rimert through the use of tangible personal property,

including but not limited to the personal medical records, files, notes, psychiatric records, and

medical history of Diane Rimert, medical equipment (mattresses, beds, wound care equipment,

etc.), diagnostic equipment (stethoscopes, thermometers, x-rays, etc.), personal property used to

take notes and conduct the January 31, 2012 survey (and other relevant surveys, including the

follow-up survey on February 3, 2012), personal property used to generate the report from the

January 31, 2012 survey (and any other relevant survey), and various computers, telephones, and

other tangible personal property used to report, record, and communicate among the Defendants to accomplish the acts and omissions described in this Complaint.  The acts and/or omissions which utilized this personal property were reckless, negligent, and/or grossly negligent and proximately caused Plaintiffs' injuries.

107.    The State of Texas, HHSC and DADS had actual knowledge of Diane Rimert's injuries and untimely death.  Plaintiff Glen Frausto contacted numerous Texas public officials, including DADS officials notifying them of his mother's injuries, suffering, and ultimate death and sought their assistance to redress the unconscionable practices of the State of Texas through HHSC and DADS.  Accordingly, notice was provided pursuant to TEX. CIV. PRAC. & REM. CODE § 101.101(c).

## DEMAND FOR JURY

108.    Plaintiffs demand a jury trial and have tendered the appropriate fee with their Original Complaint.

## PRAYER

109.    WHEREFORE, Plaintiffs respectfully pray that upon a final hearing of the cause, the Court enter judgment on Plaintiffs behalf against Defendants, for the economic and actual damages requested herein above with pre-judgment and post-judgment interest at the maximum rate allowed by law, attorneys' fees, consequential damages, incidental damages, exemplary damages, costs of court, and such other and further relief to which the Plaintiffs may be entitled at law or in equity,

Respectfully Submitted,

BY:   /s/ Darrell G. Adkerson
BERNIE E. HAUDER
State Bar No. 09233600
bernie@ahblaw.net

DARRELL G. ADKERSON
State Bar No. 00909700
darrell@ahblaw.net
1700 Pacific Ave.
Suite 4450
Dallas, Texas  75201-3005
214-740-2500 - Telephone
214-740-2501 - Facsimile

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that on this, the 17th day of April, 2014, a true and correct copy of the above and foregoing document has been forwarded to the counsel of record, as indicated below:


Linda A. Halpern
Jonathan F. Mitchell                     _____   Via Hand Delivery
Assistant Attorney General
Manager, Complex Litigation              _____   Via Certified Mail Return Receipt Requested
General Litigation Division              _____   Via Facsimile
P.O. Box 12548, Capitol Station          _____   Via Regular Mail
Austin, Texas 78711-2548                   X     Via the Court's ECF System
*Attorney for Texas Health and Human
Services Commission, Texas Department of
Aging and Disability Services, Thomas
Suehs, Carol Ahmed, Steven Shotts, and
Pam Engel*


Eric A. Hudson                           _____   Via Hand Delivery
Assistant Attorney General
H. Melissa Mather                        _____   Via Certified Mail Return Receipt Requested
Assistant Attorney General
Financial, Tax, and Charitable           _____   Via Facsimile
Trusts Division                          _____   Via Regular Mail
P.O. Box 12548, Capitol Station            X     Via the Court's ECF System
Austin, Texas 78711-2548
*Attorneys for Leland Presfield*


                         _____   /s/ Darrell G. Adkerson   _____
                         DARRELL G. ADKERSON